UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

YANIL HERNANDEZ PILOTO,

Petitioner,

v.

WARDEN, CALIFORNIA CITY
CORRECTIONAL CENTER, *et al.*,

Respondents.

Case No.  1:26-cv-03488   (AMO)

**ORDER GRANTING PETITION FOR
WRIT OF HABEAS CORPUS**

Re: Dkt. Nos. 1, 2

This habeas action concerns the detention of Petitioner Yanil Hernandez Piloto ("Petitioner"), a noncitizen who has lived in the United States for over five years. Based on the Government's new interpretation of 8 U.S.C. § 1225(b)(2)(A) as mandating detention for all noncitizens present in the United States without admission, Petitioner is being detained without the opportunity for a bond hearing. This matter is before the Court on Petitioner's writ of habeas corpus and motion for temporary restraining order. For the reasons explained below, the Court GRANTS Petitioner's writ of habeas corpus. Petitioner's motion for a temporary restraining order is resolved as moot.

I.      BACKGROUND

Petitioner is a citizen of Cuba who entered the United States without inspection or admission in or about January 2021. Dkt. 1 ¶ 1. He subsequently filed for asylum, was placed in removal proceedings, and was issued a valid Employment Authorization Document. *Id*. ¶ 3–4.

Based on the record before the Court, Petitioner's first interaction with immigration authorities occurred during his recent arrest. On April 4, 2026, Petitioner was arrested while fishing and barbecuing with his family in Miami, Florida. *Id*. ¶ 5. He has since been transferred to several detention facilities across the United States and is now being held at the California City

Processing Center. *Id*. ¶¶ 11–14.

Petitioner filed a petition for writ of habeas corpus and a motion for temporary restraining order, arguing that his detention without a bond hearing violates the INA and the Due Process Clause of the Fifth Amendment. *Id*. at 7–10. In Respondents' two-page response, the Government does not allege that Petitioner has a criminal record in the United States or elsewhere. ECF No. 7. Instead, the Government relies entirely on its new interpretation of 8 U.S.C.§ 1225(b)(2) ("Section 1225") as mandating Petitioner's detention, a position Petitioner disputes in his reply. Dkt. 10 at 2.

## II.    LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III.    DISCUSSION

The primary disagreement between the parties is whether Petitioner is subject to discretionary release pursuant to 8 U.S.C. § 1226(a) ("Section 1226"), or if Petitioner is subject to mandatory detention under Section 1225 as an "applicant for admission[.]" *See* Dkt. 8 at 1. This Court agrees with the multitude of cases that have concluded that applying Section 1225 in this situation "(1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." *Lepe v. Andrews*, 801 F.Supp.3d 1104, 1112 (E.D. Cal. Sept. 23, 2025) (citing cases).

As to the text, Section 1225(b)(2)(A) applies to an applicant "seeking admission" to the United States, whereas Section 1226(a) applies to individuals who have been arrested "on a warrant issued by the Attorney General." 8 U.S.C. §§ 1225(b)(2)(A), 1226(a). "Seeking," as noted by other courts, "means 'asking for' or 'trying to acquire or gain.'" *Lepe*, 801 F.Supp.3d at 1113 (citing Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/seeking). And the term "admission" is defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). "To piece this together, the phrase seeking admission means that one must be actively seeking lawful entry" to, as opposed to seeking *to remain in*, the United States as Petitioner is doing here. *Lepe*, 801 F.Supp.3d at 1113 (internal quotations omitted). In contrast, 1225(a)(1) explains that "[a noncitizen] present in the United States who has not been admitted or who arrives in the United States ... shall be deemed for purposes of this chapter an applicant for admission." 8 U.S.C. § 1225(a)(1). However, if Section 1225 was intended to apply to all applicants for admission—as Respondents contend—"there would be no need to include the phrase 'seeking admission' in the statute." *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 487 (S.D.N.Y. 2025).

Respondents' interpretation also ignores the statutory scheme. As the Supreme Court noted in *Jennings*, Section 1225 applies "at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). But Section 1226 is the "default rule" for "the process of arresting and detaining" aliens who are already "inside the United States[]" and "authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings." *Id.* at 288–89 (emphasis added).

Here, Petitioner is not seeking admission to the United States. He has been living in the United States continuously since 2021 and was not arrested at the border or a port of entry where he was subject to inspection. Instead, he was arrested while fishing with his family in the interior of the United States.

Further, as many courts have already noted, construing Section 1225 to apply to all non-citizens who have not been admitted would render certain portions of Section 1226 superfluous,

notably a recent amendment to the statute. Congress recently adopted the Laken Riley Act, adding Section 1226(c)(1)(E), which mandates detention for additional categories of criminal aliens. "When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect." *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1259 (W.D. Wash. 2025) (quoting *Stone v. I.N.S.*, 514 U.S. 386, 397 (1995), abrogated on other grounds by *Riley v. Bondi*, 606 U.S. 259, 261 (2025)). If all non-citizens arrested while already in this country are subject to mandatory detention under Section 1225, there would be no need to include this exception. *See Rosado v. Figueroa*, No. CV 25-2157-DHX-DLR (CDB), 2025 WL 2337099, at *9 (D. Ariz. Aug. 11, 2025) (if Section 1225's "mandatory detention provisions apply to all noncitizens present in the United States who have not been admitted, it would render superfluous provisions of § 1226 that apply to certain categories of inadmissible noncitizens"); *Rodriguez*, 779 F. Supp. 3d at 1258 (noting that if the court were to adopt a reading of Section 1225 advanced by the BIA, it would render significant portions of Section 1226(c) meaningless).

In addition, "the longstanding practice of the government—like any other interpretive aid—can inform a court's determination of what the law is." *Rosado*, 2025 WL 2337099, at *10 (citation modified) (quoting *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024)). "Until this year, DHS has applied section 1226(a) and its regime of discretionary release and review of detention to the vast majority of noncitizens allegedly in this country without valid documentation—a practice codified by regulation." *Valencia Zapata v. Kaiser*, 801 F. Supp. 3d 919, 929 (N.D. Cal. Sept. 26, 2025) (citation modified). The longstanding practice of DHS applying Section 1226 to those arrested in the interior of the United States supports the finding that this practice was the best reading of the statute.

As such, the Court concludes that Petitioner is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) and is, thus, being held in violation of federal law. As Respondents only argue that Petitioner was detained pursuant to Section 1225, and have not argued that Petitioner was lawfully detained pursuant to Section 1226, the appropriate remedy is Petitioner's immediate release. *See, e.g.*, *Lepe*, 801 F. Supp. 3d at 1119 (granting immediate release where Petitioner unlawfully detained pursuant to Section 1225); *Crispin M. C. v. Noem*, No. 1:25-CV-01487-KES-

HBK (HC), 2026 WL 70553, at *7 (E.D. Cal. Jan. 8, 2026); *J.A.C.P. v. Wofford*, No. 1:25-CV-01354-KES-SKO (HC), 2025 WL 3013328, at *7 (E.D. Cal. Oct. 27, 2025).

## IV.  CONCLUSION AND ORDER

For the reasons stated above, the Petition is GRANTED. IT IS HEREBY ORDERED that:

1.  Respondents immediately release Petitioner Yanil Hernandez Piloto (A216-774-978) from their custody.

2.  Respondents shall not impose any additional restrictions on Petitioner, unless they are determined to be necessary at a future pre-deprivation and/or custody hearing.

3.  If the government seeks to re-detain Petitioner, it must provide no less than seven (7) days' notice to Petitioner and must hold a pre-deprivation bond hearing before a neutral arbiter pursuant to section 1226(a) and its implementing regulations, at which Petitioner's eligibility for bond must be considered. This Order does not address the circumstances in which Respondents may detain Petitioner in the event Petitioner becomes subject to an executable final order of removal.

4.  The Clerk of the Court is directed to close this case and enter judgment for Petitioner. This Order resolves all pending motions.

**IT IS SO ORDERED.**

Dated: May 19, 2026

_____
ARACELI MARTÍNEZ-OLGUÍN
United States District Judge